The first case is Woodard v. Reliance Worldwide Corporation. Council? Judge Poole, your your mic was a little faint there. I'm not sure council heard. But we're missing... Okay, now you're on. Where's Appellant? Mr. Wright, will you please enable your video and also your mic is on, but turn on your video as well, Mr. Roth. Oh, it indicates I can't start the video because the host has stopped it. I have... Thank you. There we are. Excellent. Good morning. Mr. Roth, the floor is yours. Thank you. It pleases the court. Honorable judges, I need to start with an apology, which is not a good way to start. But I noticed in my brief that the case 1-10 Industry Associates, I transposed the parties. The landlord was the plaintiff, not the tenant. I should have caught it. I apologize. It shouldn't have happened. It doesn't change the analysis. Okay, so this is a case involving the covenant of good faith and fair dealing. And the principles derived from the law, I respectfully suggest, are these, and there are five. One, the plaintiff must... And with respect to cases involving compensation, of course. One, the plaintiff must have earned the compensation through work and effort. And we have that from the sales commission cases, the Houlihan case, the Dweck case, which were cited in the brief. Mr. Woodard earned his compensation through work and effort. He had a deal where it was his obligation to remain with the company and help it to and through the acquisition. He did that. And what did he receive in response, his benefit? His benefit was that he had protection. His protection was that if he was fired as a result of the acquisition, he would receive a $500,000 special sale bonus. The second principle. But there was a time limit on that, right? Right. It was finite protection. That's correct. Seven days was the time limit. And I could jump to that now, and I will. I think you should. Okay. The district court held that seven days is seven days. In doing so, and with all respect to the district court, which I have, that was not the claim we brought. That was a breach of covenant of good faith and fear dealing claim and misconstrued. Aren't you trying to rewrite the contract with your covenant claim? I am not. And that ties into the district court's polling that we were looking to add a term. And that's not so. The term already was on the contract. It's not that you're looking to add a term, but if we were to accept your argument, we would be deleting a key provision from the contract. Respectfully not so, Your Honor. The contract, in every contract in New York, has that term in it, and it's called the implied covenant of good faith and fair dealing. That's not the term that I understand Judge Chin to be referring to, and of course, he's well able to speak for himself. It's the seven day time period that Judge Pooler and I were asking about and said you ought to focus on. What do you do with that? I understand that, Your Honor. And that's what I am trying to focus on, because the seven day time period is the contract term. Within that seven day time period, the good faith and fear dealing provision, the implied provision, regulates conduct. And it regulates conduct and standards of conduct. It's never a new or conflicting term to have a good faith and fair dealing covenant regulate the conduct of the contractual term itself, the seven days. And that's the whole purpose of the covenant. Indeed, it could be argued that the defendant wants to add a term by taking away the good faith and fair dealing covenant that's inherent and implied in every contract. Who drafted this contract? I'm sorry, Your Honor? Who drafted this contract? I have no idea. I did not, but I don't know. That's a good thing. Yeah. Okay. But Your Honor, even from a practical perspective, without application and protection of the covenant, the term, the seven day term would be rendered superfluous because, and it's especially so in cases where one has the ability to control in its discretion, the other party receiving the benefit of the contract. So without... But all that was known, wasn't it? Counsel, wasn't all that known? That the other party had complete control? Yes. And that's fine, Your Honor. We agree with that and we're okay with that. The point is that the control is exercised in bad faith for no reason other than to deprive the benefit. And that's what you can't do because the... Why is that? Why is that bad faith? The contract gives the employer the right not to pay if that happens. And why is that bad faith to implement the terms of the contract? And that's the duet case and that's the sales commission cases where you've earned the right to receive it. And it's bad faith because the... And this goes to the self-interest point, Your Honor. Absolutely, RWC had the right to act in its self-interest. It had the right to... But it had the right to act in its self-interest. And this is the Houlihan case, which is very important. I'm sorry, the mslasha.com case, which is very important. You could act in your self-interest if it's... And I'm going to find the correct word here. And I apologize. Oh, yeah. If doing so is incidental, if it incidentally lessens the other parties anticipated fruits of the contract. Here, it wasn't incidental. If RWC acted in its self-interest for a legitimate business reason, or even not a legitimate business reason, and incidental to that, my client was deprived of the fruits of the contract, that's fine. He got the fruits of the contract, didn't he get? He wasn't fired within seven days. No, but Your Honor... That's what he bargained for. But he bargained for... Isn't that what he bargained for, counsel? Yes, he bargained for the seven days and he bargained for it because it's inherent in every of the seven days for no reason other than to deprive him of the seven days. Otherwise, why would... Well, they had another president that they had in the wings there to come in and take over the operation. That's absolutely right. And they made that decision before the acquisition and they laid in the grass and held it for no reason other than to deprive him of the benefit. And again, going back to making the provision superfluous, why would RWC ever pay him? Why not wait eight days, 15 days, or 29 days here and deprive him of the benefit of the contract? Conversely, why would Mr. Woodard ever agree to an essential term knowing that there would be no reason that he'd ever get it? What incentive would RWC have to not wait eight days or more? It makes no sense and it's superfluous and that's the whole purpose of it. And again, getting back to the way this law has developed way back since Wakefield and Gallagher is that if you earn the compensation through work and effort, if the compensation was vested or virtually certain to vest, if the party acted in self-interest and it was not incidental, but the reason why it acted in self-interest was for no reason other than to deprive you of the benefit you bargained for, if you assert supporting facts and especially in a case where the other party had the sole control over doing that, then the covenant comes into play. It's the duet case regarding the attorney's fee where the client decided not to sign a settlement agreement for no reason other than, as Judge Senlin, other than to deprive the lawyer of his compensation. It's the sales commission's cases where you've earned the commission and it's not, and there's a delay for no reason and not paid for no reason other than to deprive you of the compensation. This is why we have good faith and fair dealing. Counsel, your time has expired. You have reserved two minutes for rebuttal. We will hear from opposing counsel worldwide. Thank you. Good morning. This is Kara O'Sullivan of Kauffman, Bordas, and Ryan, and I am appearing on behalf of the Appellee Reliance Worldwide Corporation. The first thing that I want to address that opposing counsel had stated was regarding this contract that were earned through work and effort, and he discussed that the cases that are cited in the briefs regarding sales commissions as well as the duet case. The employment of Mr. Woodard was not that he was to bring the company into an acquisition. The appellant has cited to nothing within that employment agreement concerning that that was the purpose of the contract. In fact, the term states if during the term there is a sale of a business as this was an overall employment agreement. So there's no earning of the bonus that he was required to bring the company to an acquisition and then get this special sale bonus. The sale bonus is specifically as it says within the contract is that if there is a sale of the business, he is terminated within the seven days, then he receives this bonus. It's not any specific effort on his part, which is what these sales commission cases are in which when you have an employee who works on a commission basis. You know, the provision does seem a little unfair. In other words, if he had stayed one more day and it's all within the control of the employer. And and and, you know, if you know, the question becomes, well, if he's fired on the eighth day, what is the you know, what would the results be? And I think what we have brought up here is that the term states it's seven days and it could have been negotiated for 30 days and he was terminated on the 29th day. So luckily, my facts are that he's terminated on the eighth day. He's terminated on the 29th day. But the much better. But it does it does seem unfair in the sense that it gives a fair amount of power to the employer to deprive him of five hundred thousand dollars. Understood. But, you know, this is this is a negotiated agreement and agreements are are entered into said that so that parties have the, you know, there's there's definitiveness at the end of a contract of what the parties are going to be entitled to. And the definitiveness here was that it had to be within the seven days and it was not your your argument is that it may be unfair, but that's what they agreed to. Correct. Right. I also want to address the the case that was addressed in the reply papers of the before you do that, would you just was I was Mr. Woodward, if the record tells us independent represented independently in the of the negotiation of this agreement, of which he would have been a beneficiary? I my understanding is the record just does not tell us that. And my belief is that he was for the record. It's not reflected in the record. So with respect to the Dweck case, and that's the case concerning the law firm and the client who wouldn't consummate the settlement agreement and therefore allowing the law firm to to collect their their fee on that. So the court in that case states on page 360, that in fact, a claim for the breach of the covenant of good faith and fair dealing addresses precisely this type of situation, where one party is harmed by its inability to fulfill its obligations under the contract because of the bad faith actions of the other party. But this contract that we have is different from the contract in Dweck because this contract, there was no obligation to fulfill, he just had to remain there. So essentially, the law firm there could not fulfill its obligation and trigger and vest the payment due the bad faith actions of the client who was the defendant in that case. There was no Mr. Roth's point is the bad faith actions are on the part of the employer who got rid of them at the right time, so that it didn't have to pay anything. But and that's just just basic, those are, you know, the basic contract terms, there's no other specific thing that Mr. Woodard had to do this, as I have stated earlier, this isn't a case in which he is bringing in introducing the companies for acquisition, or he is bringing a customer to the to the company to for the benefit of the company. You know, the second reason that Dweck doesn't support the appellant's case is that, you know, both make conclusory allegations that defendants acted in bad faith. In Dweck, it is stated the client told Dweck that she would accept the settlement proposals that Dweck obtained if they would take a cut in their faith. There's no such similar allegations here. You know, appellant states that he has a myriad of convincing facts. And these facts are detailed in page 20 of the brief, there's seven bullet points, four of those bullet points are solely statements that the defendant is aware of the contract clause. The other three bullet points concern his role in the role of another employee, which your honors had mentioned earlier concerning another president. You know, the day he was terminated, and he was not paid this bonus, there's no additional facts such as Dweck has additional facts in which the individual is saying, well, I'm gonna I'm not going to accept these because I want you to take a cut in your fee. We don't have that kind of fact here. We just have an allegation that, well, they delayed it because just look, just look at the timing. Lastly, in Dweck, the retainer agreement in Dweck is the whole basis of the agreement. The agreement in our case is an employment agreement with one paragraph. So he receives the benefits of the employment agreement. He's paid his salary. When he is terminated, there's a provision in that agreement concerning the termination notice. And he gets paid during that period of the notice. So we have that, that difference there with Dweck and this case, you know, the MA com case that that plaintiff appellate cited earlier, that's a Second Circuit case. And that case also concerns the, the whole of an agreement where it states in general, courts enforce the implied covenant where an implied promise was so interwoven into the, in the whole writing, excuse me, so interwoven in the whole writing, and that's a quote, of a contract to be necessary for its effectuation and purpose of the contract. The purpose of this contract here was the employment. It wasn't this, it wasn't a sales commission contract. It wasn't a contract in which he had to bring a company into merge or acquire. And so plaintiff received the benefit of the contract here in that he received the agreed upon benefits of the employment contract. Part of the agreed upon benefits are the seven day provision. Other, other cases that are supportive of Appellee's case is the Phoenix capital case, the first department case, where there was a, which is a matter on a hedge fund where almost like a sales commission, a investor is brought to the company. If he, if that investor, excuse me, if that investor invests with the company, even if that person is terminated, they invest within one year of that termination, they will make a commission on that. The, there was an introduction by the plaintiff of an investor to the defendant. Soon after that introduction, plaintiff is terminated from that employment or from that two years later that that company decides to invest with the defendant. A claim is made that it was bad faith of the termination and that they had convinced the investor to wait until that one year tail period to invest in order not to pay plaintiff his money under the contract. It was implied covenant of good faith and fair dealing claim. And the first department held that, you know, the, the delayed investment is not, is an invalid substitute for the non-viable breach of they invested in one year and they invested outside of that period of time. Thank you. Yes, your honor. I'm sorry. Do you have a question, judge hall? No, no, sorry. I have no questions. Thank you, judge. Thank you. Counsel, mr. Roth. You serve two minutes for rebuttal. Mr. Ross, what are we missing? He signed this contract that said if they don't fire him within seven days, he survives, but that if you fire him in more than seven days, he gets nothing. We're missing the application of the covenant of good faith and fair dealing, which requires the other party to act in good faith under circumstances like this. Ms. O'Sullivan's argument. How is it bad faith to implement the terms of the agreement? It's bad faith when you implement the terms of the agreement in bad faith and for no reason other than to deprive the other side of a, of the, it's exactly the same reason, your honor, with respect to the sales commission cases, the duet case and so forth. And you have a car trying to save themselves $500,000. They don't want to pay the $500,000. Is that bad faith? It's bad faith when that's the only reason why you've done it when you've made the decision to have it vest before the seven days is up. So if you make it, if you're requiring, we don't know when they made the decision, do we? That's not part of the record. And that goes to Ms. O'Sullivan's second argument. The decision was made before the acquisition. And the only reason they waited was to deprive of a benefit that was within their sole control. And, and Ms. O'Sullivan. But, but counsel, your client, either knowing that or not knowing that, agreed to seven days. He agreed to seven days and had the contractual right to have it done in good faith. And your honor, Ms. O'Sullivan makes, made two points there. So, so Mr. Roth, to try to wrap my head around your argument, this is for me alone. Would this ever have been in your view, would, would they ever have been able to, you know, can him at the end of eight days? Of course, your honor, if the decision to can him was, it was incidental to a good faith business decision or any other business. Well, and I think Judge Chin suggested a good faith business decision, which would be a half a million dollars, which maybe walking around money for some people, but that's a lot in my view. And that's the whole point that it's a lot, your honor, because it's a good faith business decision. If canning them to say $500,000 was incidental to a, a different decision in terms of why to terminate him. But given the interpretation that. But they had another guy to come into his place. But that's the whole point, your honor. They knew that before the acquisition, and I could get into that. No, I don't think you need to. They knew that before the acquisition and that's the whole point. They knew that before the acquisition that his job was history and they laid in wait and didn't terminate him for past seven days for no reason other than to deprive him of a benefit, which was in their self-control. His benefit only lasted seven days. That's what he bargained for. Your honor, I understand that. And if they made the decision to terminate him before the seven day period and waited for no reason other than their prime, if they told me. They didn't have to state a reason, did they? As I read the contract. They didn't have to state a reason why they terminated him, but we now know the reason. And the reason was for no reason, but to deprive him of it. They had someone doing his job. It was duplicative. They folded his division into the parent. They knew that before the acquisition based on all the circumstantial evidence. All right. Your time has long since expired. Our clock is not working perfectly, but thank you both for your argument. We'll reserve decision. Thank you so much for your time. Thank you.